WILLIAM D. ROBERTS and DAVID M. ARMOUR, members of The United Brotherhood of Maintenance of Way Employes and Railway Shop Laborers, in behalf of themselves and also in behalf of such other members of said Brotherhood as may desire to join as complainants herein, and MAX FICKERT and JOSEPH GREEK, Intervenors,

*vs.*

LEO I. KENNEDY, WILLIAM T. HAINES, CLYDE A. RIEGEL, JOHN T. REDMON, CLYDE L. HAWKINS, JAMES F. OWEN, FRANK B. COLLIER, PEARL D. BALLINGER, A. W. WITKOP, CHARLES B. O'FLANAGAN, WILLIAM H. KANE, WILLIAM C. WEAVER, SR., DANIEL REDMON and CHARLES H. MILLS.

*New Castle, Jan. 22, 1926.*

*David J. Reinhardt*, for complainants.

*J. Frank Ball* and *Robert G. Harman*, for defendants.

THE CHANCELLOR. In the opinion filed by me on July 29, 1925, I held that as the complainant Armour was a member in good standing of the Pennsylvania System Division of the United Brotherhood of Maintenance of Way Employes and Railway Shop Laborers, at the time the bill was filed and had ever since continued to be such member, the suit was properly pending and that further argument should be made by the solicitors on the general merits of the bill.

When the cause came on for such further argument, it was urged that I had fallen into an error of fact in two particulars with respect to the status of Armour, when I reached the conclusion on July 29 last that he was a member in good standing as stated. These two errors of fact, it is said, consist in this, (a) that I stated Armour was a Grand Vice-President of the Brotherhood, and (b) that he became a member in good standing of Local No. 1793 in the year 1921. It appears that the statement (a) was erroneous, having no justification in the record. With respect to (b), the record contains some justification for it. While at no place in the testimony is the exact date of Armour's admission into No. 1793 disclosed, yet

on page 118 of the record questions addressed to Armour and his answers thereto warrant the conclusion that he was a member of Local No. 1793 in 1921. The questions and answers referred to are as follows:

"Q. To what local lodge do you belong?
"A. No. 1793.
"Q. Where is that lodge located?
"A. Bradford, Ohio.
"Q. Are you a member of that lodge in good standing?
"A. I am.
"Q. Were you a member in good standing at the time of bringing this bill of complaint in this cause? (November 7, 1921.)
"A. I was.
"Q. And have been a member in good standing ever since?
"A. I have."

This testimony was what led me to conclude that Armour became a member of Local No. 1793 in 1921.

But regardless of what the fact may be with respect to the exact date of Armour's joining Local No. 1793, it is clear as heretofore held that he was a paid-up member of Local No. 480 down to January 1, 1922, a date subsequent to the filing of the bill. Furthermore, he was at the time an "organizer" for the Brotherhood. The constitution and by-laws (article I, § 11) show that "organizers" are supposed to hold membership in some local lodge. Laying aside this supposition, however, it clearly appears that Armour swears he was a member of either Local No. 480 or No. 1793 (both in the Pennsylvania System Division) at the time the bill was filed, and has been a member of one or the other ever since. The defendants argue that there may have been a gap between his membership in these two locals and so there may have been a period when Armour was out entirely. If a brief period of non-membership be allowed to have some significance (which I do not pause to consider), it nevertheless cannot be regarded, for the reason that the existence of such period of non-membership is purely speculative and is in the face of Armour's express and positive testimony that he was a member in good standing at the time the bill was filed and has been ever since. The omission of Armour to name the exact date of his joining Local No. 1793 is the occasion for the suggestion of the possibility mentioned. Armour

was on the stand, open to cross-examination and his general statement of continuous membership was not probed. In this state of the record, a mere speculative possibility cannot be allowed to overcome his positive testimony.

As to Armour's right to be admitted to membership because he is not an employee of any railroad, what was said on this subject in the memorandum filed July 29, 1925, is inapplicable insofar as it was predicted on his holding the office of Grand Vice-President. The same reasoning which was there developed in connection with the office of Grand Vice-President might however with like force be applied to the office of "organizers," for article X, § 1, appears to demand of "organizers" as another article does of Grand Vice-Presidents, that they shall devote such an amount of their time to their duties that they must necessarily cease to be railway employees. Moreover, organizers who thus are driven by the necessity of their duties to terminate their relationship of railway employees are expressly recognized as competent to serve as delegates representing local lodges in the grand lodge, article I, § 11. It is hardly conceivable that a person who is not regarded as a member of a local lodge could act for it as a delegate in the grand lodge, and the section just referred to contains language in support of this statement in that it provides that no organizer shall represent any lodge other than "the one in which he holds membership."

But aside from the argument showing Armour to have been a lawful member because of his office of organizer (how long he continued as such, or whether he has always been one, I do not recall whether the record discloses)—it nevertheless remains true that he swears he is and ever since before the bill was filed has been a member of the Brotherhood and of some lodge which is a part of the Pennsylvania System Division. This testimony is not overcome. If the Brotherhood and one of its lodges recognizes him as a member, I do not see how the defendants who have withdrawn and are members of a rival organization are in a position to try out the question of the propriety of their conduct in admitting him to membership. If the Brotherhood organization through a local lodge chooses to accept a man among its membership and recognize him as in good standing, how can strangers be heard to

complain that the internal law of its organization has been violated? I do not see how it concerns them.

Armour's status is therefore sufficiently established to warrant a retention of the bill for final decree.

What, on the merits, should be the character of the decree? I shall indicate this in a very general way. The defendants admitted at the argument that the real estate which they hold and the money in bank are in equity the property and money of that branch of the United Brotherhood known as the Pennsylvania System Division. I had formerly supposed that this proposition was disputed and it was this point which I desired further argument upon when the last memorandum was filed. In view of the admission made at the argument, discussion is not necessary. The decree will be adverse to the defendants, but its terms with respect to the property rights will be so drafted that its relief will run to the benefit of that branch of the Brotherhood known as the Pennsylvania System Division. The details of the relief asked may be taken up when a draft form of decree is submitted. Costs should be imposed on the defendants.

Note.—In accordance with the foregoing opinion, a decree was entered requiring that the moneys in bank and other property be transferred to the Pennsylvania System Division, or to its solicitor (the real estate having been sold under mortgage foreclosure proceedings), and the defendants appealed to the Supreme Court. The decree of the Chancellor was affirmed in an opinion reported *post p.*