*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN B.; CARRIE G.; JOSHUA M.; MEAGAN A.; ERICA A., by their next friend, L.A.; DUSTIN P. by his next friend, Linda C.; BAYLI S. by her next friend, C.W.; JAMES D. by his next friend, Susan H.; ELSIE H. by her next friend, Stacy Miller; JULIAN C. by his next friend, Shawn C.; TROY D. by his next friend, T.W.; RAY M. by his next friend, P.D.; ROSCOE W. by his next friend, K.B.; WILLIAM B. by his next friend, K.B.; JACOB R. by his next friend, Kim R.; JUSTIN S. by his next friend, Diane P.; ESTEL W. by his next friend, E.D.; individually and on behalf of all others similarly situated,

　　　　　　　　　　*Plaintiffs-Appellees,*

　　　　*v.*

M.D. GOETZ, JR., Commissioner, Tennessee Department of Finance and Administration; DARIN GORDON, Assistant Commissioner, Bureau of TennCare; VIOLA P. MILLER, Commissioner, Tennessee Department of Children's Services,
　　　　　　　　　　*Defendants-Appellants.*

No. 07-6373

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00168—William J. Haynes, Jr., District Judge.

Argued: March 20, 2008

Decided and Filed: June 26, 2008

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael W. Kirk, COOPER & KIRK, Washington, D.C., for Appellants. Michele M. Johnson, TENNESSEE JUSTICE CENTER, Nashville, Tennessee, for Appellees **ON BRIEF:** Michael W. Kirk, Charles J. Cooper, Brian S. Koukoutchos, Nicole Jo Moss, Derek L. Shaffer, COOPER & KIRK, Washington, D.C., Linda A. Ross, OFFICE OF THE TENNESSEE

ATTORNEY GENERAL, Nashville, Tennessee, Ronald G. Harris, Aubrey B. Harwell, Jr., NEAL & HARWELL, Nashville, Tennessee, for Appellants. Michele M. Johnson, G. Gordon Bonnyman, Jr., TENNESSEE JUSTICE CENTER, Nashville, Tennessee, for Appellees. William P. Marshall, OHIO ATTORNEY GENERAL OFFICE, Columbus, Ohio, Michael A. Cox, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Gregory D. Stumbo, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, Sarah Somers, Jane Perkins, NATIONAL HEALTH LAW PROGRAM, Chapel Hill, North Carolina, Elizabeth A. Alexander, Christopher E. Coleman, LIEFF, CABRASER, HEIMANN & BERNSTEIN, Nashville, Tennessee, Kelly M. Dermody, Allison S. Elgert, LIEFF, CABRASER, HEIMANN & BERNSTEIN, San Francisco, California, for Amici Curiae.

ROGERS, J., delivered the opinion of the court, in which GIBBONS, J., joined. COLE, J. (p. 12), delivered a separate concurring opinion.

---

**OPINION**

---

ROGERS, Circuit Judge. State defendants seek mandamus relief from two discovery orders issued by the district court during the course of this class-action litigation. The district court issued the orders after a discovery dispute arose regarding defendants' duty to preserve and produce electronically stored information relevant to the litigation. In the first order, the district court directed plaintiffs' computer expert and a court-appointed monitor to inspect the state's computer system and the computers of 50 key custodians to ascertain whether any relevant information has been impaired, compromised, or removed. The second order denies reconsideration of the first order and directs that the first order be executed forthwith. Both orders allow plaintiffs' computer expert to make forensic copies of the hard drives of identified computers, including not only those at the work stations of the state's key custodians, but also any privately owned computers on which the custodians may have performed or received work relating to the TennCare program. The orders also direct the U.S. Marshal, or his designated deputies, to accompany plaintiffs' computer expert to ensure full execution of the orders. This court entered an emergency stay of implementation of the orders on December 7, 2007. For the reasons stated below, we now grant in part defendants' petition for mandamus.

**I.**

This case arises from class-action litigation related to Tennessee's TennCare program. In 1993, Tennessee obtained a waiver from the Secretary of Health and Human Services to replace its fee-for-service Medicaid program with a managed care system called TennCare. In 1998, the instant action was filed on behalf of a class of approximately 500,000 children enrolled in the TennCare program, seeking to enforce certain provisions of the Social Security Act. Title XIX of the Social Security Act requires state plans that accept federal funding, like TennCare, to provide Medicaid-eligible persons under the age of 21 with certain Early and Periodic Screening, Diagnosis and Treatment (EPSDT) services. *See* 42 U.S.C. §§ 1396a(a)(43), 1396d(r). These services include regular medical screening, vision, hearing, and dental services. § 1396d(r).

Almost immediately after the case was filed, the parties entered into a Consent Decree. The decree recognized a number of deficiencies in the TennCare program and set goals and time frames for compliance with federal law. Pursuant to the decree, the state retained an expert to evaluate EPSDT services for children. After the expert submitted a report in late 1998, the parties submitted two proposed agreed-upon orders and entered into a remedial plan. The district court approved the orders in May 2000. Eventually, the state encountered difficulty implementing the remedial plan and moved to stay implementation of the plan and modify the agreed-upon orders. In response,

plaintiffs moved to hold defendants in contempt for violating both the Consent Decree and the May 2000 orders.

In December 2001, the district court, with Judge Nixon then presiding, ruled on the motions after three weeks of hearings. The court noted that "[t]he record demonstrates that the Defendants have been, for the most part, well-intentioned and diligent in attempting to comply with both the Consent Decree and federal EPSDT requirements," but expressed that "from the beginning, the State's efforts have been hampered by institutional inefficiencies and fundamental problems associated with the TennCare system." *John B. v. Menke*, 176 F. Supp. 2d 786, 790, 791 (M.D. Tenn. 2001). Ultimately, the district court concluded that the state had not established compliance with federal EPSDT requirements, and held in abeyance consideration of whether defendants were in contempt for violating the Consent Decree. *Id.* at 791, 800, 806-07. As a remedy, the district court appointed a special master to confer with the parties and to submit a plan to address the deficiencies in the TennCare program. *Id.* at 807-08.

In 2004, the Governor of Tennessee proposed TennCare reform to control the mounting costs of the program. On account of these reforms, the parties again began to dispute issues related to the state's compliance with the Consent Decree. In June 2004, plaintiffs moved for an order to show cause why defendants should not be held in contempt for violating the decree. On October 22, 2004, the district court issued a second order finding the state noncompliant and instructing the special master to create a remedial plan.

On November 18, 2004, defendants moved for leave to take discovery on the ground that the court's October 22, 2004 order and plan were the product of allegedly improper *ex parte* communications between the court and the special master.[1] Thereafter, the case was held in abeyance for a time. On December 13, 2005, the court, at the proposal of both plaintiffs and defendants, vacated its October 22, 2004 order and denied as moot defendants' discovery requests. However, on December 21, 2005, defendants renewed their motion for discovery, contending that the vacatur of the October 22, 2004 order did not eliminate the potential prejudice resulting from the *ex parte* communications between the judge and the special master.

In response to defendants' renewed motion for discovery, Judge Nixon recused himself from the case. In his order of recusal of February 3, 2006, Judge Nixon wrote that he recused himself "to remove any barrier—perceived or real—to the ultimate goal of increasing the State's compliance with EPSDT requirements." The case was then transferred to Judge Haynes, who had handled another branch of TennCare litigation. Judge Haynes held a status conference on February 10, 2006, to discuss outstanding issues with the parties' counsel. After review of the record, Judge Haynes decided to retain the special master as a technical advisor and appoint monitors to assist the parties and the court in identifying issues remaining in the case.

At the February 10, 2006 conference, defendants took the position that the state had achieved compliance with the Consent Decree. In response, plaintiffs propounded discovery requests in March 2006 seeking information and documents, including electronically stored information ("ESI"), relevant to the state's compliance. Defendants responded on May 15, 2006, but converted responsive ESI to hard paper copies. Between May and August 2006, the parties disputed whether the state was required to produce ESI as opposed to hard copies, and also disputed whether the state was required to provide responsive documentation from managed care contractors ("MCCs").[2]

---

[1] The dispute regarding the *ex parte* communications involved the special master's submission of an August 2, 2004 status report to the court. The status report allegedly "repeatedly cited statements Defendants had made in confidence to the Special Master's Office pursuant to the compliance evaluation process."

[2] MCCs deliver the health care services to the plaintiff class.

When the parties could not resolve these issues, plaintiffs filed a motion to compel discovery on October 13, 2006. Prior to the dispute over ESI production, defendants had produced massive amounts of information by hard paper copy.

On November 21, 2006, the district court granted the plaintiffs' motion to compel in part. The court ordered defendants to provide responsive documents to plaintiffs in electronic format, subject to defendants' right to "claw-back" privileged documents. The court also ordered defendants to provide a written description of the technical specifications regarding the state's electronic data, and further provided that the parties were to create a protocol for production of electronic records. Because defendants conceded that some hard documents provided were produced in incomplete form, the court permitted the plaintiffs to obtain assurances on the completeness of discovery responses by requesting certification of all persons who were involved in searching the records and making discovery available on the state's behalf. The district court also ordered defendants to produce responsive documents in the possession of the MCCs.

On December 6, 2006, the district court held an "experts only" conference, where it directed the parties' computer experts to confer to develop a protocol to address problems with electronic discovery. At the end of the conference, the parties' experts announced a protocol for discovery and preservation of responsive ESI. The parties settled on electronic searches with keywords to be identified by the plaintiffs. The defendants were obliged to survey individuals identified as designated record custodians to ascertain whether those individuals had preserved relevant ESI.[3] On January 14, 2007, the court entered an order that authorized defendants to use zip software instead of forensic methods to preserve ESI.[4] The court also ordered defendants to file certifications from all record custodians as to whether any relevant information had been "removed" from their computers.

In the ensuing weeks, the parties continued to dispute issues related to the production of ESI. The dispute culminated in the plaintiffs' filing a renewal of their motion to compel discovery on March 8, 2007. The district court conducted a hearing on the motion in June 2007 and, on October 9, 2007 and October 10, 2007, issued a 187-page memorandum opinion and accompanying order granting the motion to compel. In the memorandum opinion, the district court concluded that, from its perspective, "the core of this ESI discovery controversy is the absence of any effective attempt by the Defendants to preserve and segregate relevant ESI, since the filing of this action in 1998." The district court made several findings of fact, including the following:

> (1) only in March 2004 did defendants prepare a litigation hold memorandum for employees and MCCs in TennCare;
>
> (2) even if defendants distributed the March 17, 2004 litigation hold memorandum, it was not effectively implemented;[5]

---

[3]For discovery purposes, there are 50 key record custodians that were apparently proposed by plaintiffs and accepted by defendants. The state also provided a list of over 160 designated record custodians (of which the 50 key custodians are part) whose files were reviewed for the purpose of responding to discovery requests.

[4]Prior to the January 14, 2007 order, the district court entered an order at a December 20, 2006 status conference that instructed defendants to "make a forensic copy of the current 'My Documents' or equivalent folder from the local machines of all designated custodians." In response, the state raised questions about the method of preservation of responsive ESI and, based on the consensus of the parties, the court allowed defendants to use zip software rather than forensic copying to preserve responsive ESI.

[5]On March 17, 2004, the state issued a memorandum to work teams established by the Governor to reform the TennCare program. This memorandum acknowledged a duty to preserve relevant ESI and other information, and set out procedures for such preservation. The parties have disputed the scope and purpose of this memorandum.

(3) under the state's standard email system, emails older than 180 days automatically roll off the system unless archived;

(4) in some instances, state employees had not archived emails, and some employees left employment without preserving relevant documents;

(5) defendants did not tell the MCCs to preserve and produce responsive information until November 2006;

(6) the defendants' survey of state record custodians did not comply with the January 14, 2007 order.

In its conclusions of law, the district court discussed the defendants' duty to preserve ESI, and concluded that defendants had a duty to preserve such information from the beginning of the litigation. The court again noted that defendants did not create any meaningful litigation hold until March 17, 2004, and, even then, did not implement that litigation hold memorandum effectively. The court concluded that while officials and employees may have been reminded of the obligation to preserve responsive documents, they were left "to decide on their own what to retain without evidence of any written instruction or guidance from counsel on what is significant [or] material information in this complex action." Finally, after noting that other courts have sanctioned litigants for failing to preserve ESI, the court reserved discussion of sanctions until "completion of the ESI discovery ordered by the Court."

In its accompanying order of October 10, 2007, the district court directed defendants to provide complete responses to plaintiffs' discovery requests for ESI with the agreed terms, for the designated custodians, and for the time period of June 1, 2004 to the present. The court ordered that the ESI include all metadata and all deleted information on any computer of any of the designated custodians. Additionally, the order provided that plaintiffs' computer expert was to "inspect the Defendants' computer system to assess whether any changes have been made to hinder the ESI production." The court also ordered defendants to implement the March 17, 2004 litigation hold memorandum, to comply with the January 14, 2007 order, and to have designated custodians file certifications regarding whether any ESI had been removed from any computer. Following entry of the memorandum opinion and order, the court appointed Ronald J. Hedges, a former U.S. magistrate for the District of New Jersey, to serve as monitor for the ESI discovery.

Between October 15, 2007 and November 6, 2007, the parties filed a number of motions with the district court pertaining to electronic discovery. On October 15, 2007, defendants moved for reconsideration or clarification of the court's October 10, 2007 order, arguing that the court misunderstood the origin, purpose, and scope of the March 17, 2004 litigation hold memorandum. Defendants contended that the memorandum was directed to team leaders of the "TennCare Transformation Work Teams," which no longer exist. Defendants further argued that implementation of the March 17, 2004 memorandum would be redundant in light of other court-ordered ESI preservation procedures and that implementation of the memorandum "may very well be impossible."

On October 16, 2007 and October 17, 2007, plaintiffs filed a reply and supplemental reply to defendants' motion for reconsideration and clarification. Plaintiffs questioned defendants' "belated" contention regarding the narrow scope of the March 17, 2004 litigation hold memorandum. Plaintiffs also argued that defendants had taken inconsistent positions with respect to that memorandum. On October 24, 2007, defendants filed a second motion for reconsideration and clarification of the October 10, 2007 order. Among other things, defendants argued that the redaction of certain confidential information from the ESI ordered produced was not possible.

On October 30, 2007, plaintiffs requested an order imposing sanctions on defendants for failure to comply with the October 10, 2007 order. On November 6, 2007, plaintiffs also filed a motion to compel defendants to comply with the October 10, 2007 order. Plaintiffs claimed that "[d]efendants' defiance of the Order threatens to make it impossible to retrieve deleted discovery documents or assess the full extent of the State's destruction of electronically stored information."

In response to these motions, the district court issued the two discovery orders contested here. The court issued the first order on November 15, 2007, denying in part and granting in part defendants' first motion for reconsideration and denying in full defendants' second motion for reconsideration. While the court clarified that implementation of the March 17, 2004 litigation hold memorandum "is limited to a second review of the Defendants' paper documents for relevance to this action, production to the Plaintiffs and preservation," the court denied the remainder of defendants' requests. Like the order of October 10, 2007, the November 15, 2007 order included an inspection provision. The court ordered plaintiffs' computer expert, Michael Tigh, and monitor Ronald Hedges to inspect the state's computer system and any computers of the 50 key custodians that contain relevant information to "assess whether any production of information required by the Consent Decree or previous Order[s] of the Court and the October 10, 2007 Order of the Court, has been impaired or compromised or removed." In addition, however, the November 15, 2007 order further provided that Tigh and Hedges

> shall make forensic copies of any computer inspected to ensure the preservation of all existing electronically stored information ("ESI"). The United States Marshal or his designated deputies shall accompany Mr. Tigh, his computer expert and Mr. Hedges to ensure that this Order is fully executed. Mr. Hedges shall provide any necessary guidance to the United States Marshal or his designee in executing this Order.

On November 16, 2007, defendants filed an emergency motion for clarification and/or reconsideration of the November 15, 2007 order. Defendants contended that the November 15 order was "extraordinarily intrusive and wholly unwarranted," and requested clarification from the district court that (1) any forensic copies will be taken into the custody of the United States Marshal and retained under seal pending further order of the court, (2) Tigh will ensure that any forensic examination be conducted in a manner that protects against disruption of regular state operations, and (3) the personal computers and homes of relevant officials are not within the scope of the order.

On November 19, 2007, the district court issued the second order. The court granted in part and denied in part defendants' emergency motion. The court stated that it had "entered an earlier Order [the January 14, 2007 order] predicated on the parties' experts' agreement to ensure preservation of ESI in a less intrusive manner (Docket Entry No 789, Order), but the Defendants breached that agreement and violated that Order." The court found defendants' suggestions that Tigh and Hedges would be disruptive in making forensic copies "at best disingenuous." The court then supplemented the November 15 order by providing that the U.S. Marshal will assume custody of the forensic images and that the court will maintain those images under seal pending further order. For privately-owned computers not located on state property, the court provided that "the U.S. Marshal or his designee shall arrange with state security personnel to go to the locations where such computers are located and shall remove the computers to a state office where Mr. Tigh can image them under the Monitor's oversight." In all other respects, the court's order of November 15, 2007 was to be executed "forthwith."

Thereafter, defendants sought an emergency stay from the district court. The district court denied defendants' motion to stay on November 26, 2007. In denying the stay, the court issued a memorandum opinion further explaining its bases for the November 15 and 19 orders. The court explained that "[t]hese Orders were to protect against the Defendants' destruction of responsive

information in light of the Defendants' persistent refusals to produce ESI in violation of the Court's orders." The court stated its belief that "[d]efendants' assertions on ESI discovery have been inconsistent and inaccurate" and that the methods of forensic copying presented by the plaintiffs' expert "are neither disruptive nor unnecessarily intrusive." The court expressed that no threat of irreparable harm existed to defendants because "the forensic imaging will occur under safeguards that address the expressed legitimate concerns that the Defendants had."

On November 21, 2007, defendants filed an emergency motion with this court to stay the November 15 and 19 orders. This court granted the stay on December 7, 2007. We now address whether defendants are entitled to relief from the district court's orders.

## II.

Because certain aspects of the district court's November 15 and 19 orders constitute a demonstrable abuse of discretion, we grant defendants' petition for mandamus. We set aside those portions of the orders that call for the forensic imaging of all hard drives and other devices that contain relevant ESI, including those provisions that require the U.S. Marshal or his designee to accompany plaintiffs' computer expert in the execution of the orders. We express no opinion with respect to other provisions in the orders that can be executed in a manner consistent with this opinion.

It is axiomatic that "[m]andamus relief is an extraordinary remedy, only infrequently utilized by this court." *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997). Mandamus from this court is generally reserved for "questions of unusual importance necessary to the economical and efficient administration of justice" or "important issues of first impression." *Id.* (quoting *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)). Indeed, for the writ to issue, petitioners must demonstrate a "clear abuse of discretion" on the part of the district court. *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989); *In re King World Prods., Inc.*, 898 F.2d 56, 58 (6th Cir. 1990).

In an effort to distinguish between "errors that are merely reversible and not subject to mandamus, and those errors that are of such gravity that mandamus is proper," *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 303 n.5 (6th Cir. 1984) (citation omitted), this court balances five factors. We examine whether: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *In re Perrigo Co.*, 128 F.3d at 435 (citing *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996)). These factors need not all be met, and some factors will often be balanced in opposition to each other. *Id.* Because the first, second, third, and fifth factors all weigh in favor of granting the writ, this case presents the type of extraordinary circumstance that warrants mandamus relief.

At the outset, it is clear that defendants have no other adequate means to attain the relief they desire. This court has recognized that mandamus may be used as a "means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality." *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 472 (6th Cir. 2006) (quoting *In re Perrigo Co.*, 128 F.3d at 436); *see also In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) (noting that mandamus has been found appropriate where discovery orders implicate privacy rights). The orders at issue here compel the imaging and production of various state-owned and privately owned computers and electronic devices, and that media will almost certainly contain confidential state or private personal information that is wholly unrelated to the TennCare litigation. Plaintiffs are correct that the discovery orders merely call for the imaging of the relevant media and that the

district court has yet to determine how to proceed with respect to the information contained on that media.   Nevertheless, the mere imaging of the media, in and of itself, raises privacy and confidentiality concerns.  Duplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent. Further, counsel for plaintiffs conceded at oral argument that the information contained on the hard drives, including information not related to this litigation, must eventually be accessed to determine relevance.

Moreover, discovery orders such as those at issue here are generally not immediately appealable under the final judgment rule or the collateral order doctrine. *See United States ex rel. Pogue*, 444 F.3d at 471-72.  This is so because a party "can obtain effective review of the district court order by failing to comply with the order and perfecting an appeal should the district court impose sanctions" or a contempt citation. *Dow Chem. Co. v. Taylor*, 519 F.2d 352, 355 (6th Cir. 1975); *see also Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992).  Although it is true that nothing prevents defendants in this case from disobeying the district court's orders and incurring a citation for contempt from which they could appeal, that approach would not afford defendants an *adequate* means to attain relief.  The orders at issue here extend not only to computers and devices in the personal custody of defendants, but also to computers and devices in the custody of individuals that are not party to this litigation.  As a consequence, defendants' refusal to obey the district court's orders will not preclude other individuals subject to the orders from complying. Because defendants, as state officers, maintain an interest in preventing the imaging of all computers and devices that contain confidential state information, an appeal from a contempt citation would not suffice to protect this interest.[6]  Accordingly, the first factor weighs in favor of mandamus relief.

With respect to the second mandamus factor, the record indicates that the district court's orders will cause defendants to suffer at least some damage or prejudice that cannot be corrected on appeal.   Contrary to the district court's conclusion, these orders cannot be executed without some disruption of state business.  The orders require the plaintiffs' computer expert, accompanied by a deputy U.S. Marshal, to enter state agencies, and the offices and homes of state officials, to make forensic copies of hard drives and other devices that contain information related to the TennCare program.  Leaving aside for the moment other federalism and comity concerns implicated by the orders, such procedures cannot be carried out without disrupting state business to some degree. And, as discussed, the imaging of these computers and devices will result in the duplication of confidential and private information unrelated to the TennCare litigation.  This duplication implicates significant privacy and confidentiality interests—regardless of whether the imaged media are initially held under seal—and these interests cannot be fully protected *ex post*.  For these reasons, the second mandamus factor weighs in favor of granting the writ.

Most importantly, the district court's orders are clearly erroneous as a matter of law, thus meeting the third mandamus factor.  Although district courts generally maintain broad discretion in matters of discovery, *see Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988), this court will find an abuse of that discretion if "left with 'a definite and firm conviction that the court below committed a clear error of judgment.'" *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 209 (6th Cir. 1995) (quoting *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984)).  The

---

[6]These facts also give the district court's orders some of the markings of immediate appealability articulated in *Perlman v. United States*, 247 U.S. 7, 13 (1918).  Under *Perlman*, "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992).  This court has noted that the *Perlman* exception "was designed to allow the holder of the privilege and not the custodian of the documents to immediately appeal without being subject to contempt." *United States v. James T. Barnes & Co.*, 758 F.2d 146, 146 (6th Cir. 1985).  Because defendants in this case are record custodians, this case does not fit precisely within the *Perlman* exception.  And because our authority in mandamus is clear here, there is no need to apply *Perlman* to the facts of this case.

provisions in the orders that require the forensic imaging of all computers containing responsive ESI constitute an abuse of discretion.

As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003); The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, Second Edition 11, 28 (The Sedona Conference Working Group Series, 2007), *available at* http://www. thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf. It is the responsibility of the parties to ensure that relevant ESI is preserved, and when that duty is breached, a district court may exercise its authority to impose appropriate discovery sanctions. *See* Fed. R. Civ. P. 37(b), (e); The Sedona Principles, *supra*, at 70 (noting that sanctions should be considered only if the court finds a clear duty to preserve, a culpable failure to preserve and produce relevant ESI, and a reasonable probability of material prejudice to the adverse party).

There is less clarity, however, surrounding the question of a district court's authority to compel the forensic imaging and production of computer hard drives as a means by which to preserve relevant electronic evidence. Because litigants are generally responsible for preserving relevant information on their own, such procedures, if at all appropriate, should be employed in a very limited set of circumstances. *Cf.* The Sedona Principles, *supra*, at 33 (noting that, because all litigants are obligated to preserve relevant information in their possession, preservation orders generally must be premised on a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion). In this case, the district court ordered the forensic imaging predominantly for preservation purposes, explaining that "[t]hese Orders were to protect against the Defendants' destruction of responsive information in light of the Defendants' persistent refusals to produce ESI in violation of the Court's orders." In so doing, the district court committed a clear error in judgment.

To be sure, forensic imaging is not uncommon in the course of civil discovery. *See Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. March 24, 2006). A party may choose on its own to preserve information through forensic imaging, and district courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers. *See, e.g.*, *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *3-*6 (E.D. Mo. Dec. 27, 2006), amended by 2007 WL 685623 (E.D. Mo. Feb. 23, 2007); *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387, at *1-*3 (E.D. Pa. Jan. 31, 2007); *Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 184889, at *2 (W.D. La. Jan. 22, 2007). Nevertheless, "[c]ourts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *Balboa Threadworks*, 2006 WL 763668, at *3; *see also Balfour Beatty Rail, Inc. v. Vaccarello*, No. 3:06-CV-551-J-20MCR, 2007 WL 169628, at *2-*3 (M.D. Fla. Jan. 18, 2007); *Diepenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2006 WL 1851243, at *2-*4 (W.D. Mich. June 30, 2006). As the Tenth Circuit has noted, albeit in an unpublished opinion, mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures. *See McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001). And the Sedona Principles urge general caution with respect to forensic imaging in civil discovery:

Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail. . . . [M]aking forensic image backups of computers is only the first step

of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.

The Sedona Principles, *supra*, at 34, 47. Thus, even if acceptable as a means to preserve electronic evidence, compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures. *Cf.* Fed. R. Civ. P. 34(a) Advisory Committee Note (2006) ("Courts should guard against undue intrusiveness resulting from inspecting or testing [electronic information] systems.").

The district court's compelled forensic imaging orders here fail to account properly for the significant privacy and confidentiality concerns present in this case. The district court has ordered plaintiffs' computer expert, accompanied by deputy U.S. Marshals, to enter state agencies, and the offices and homes of state officials, to make forensic images of hard drives and other devices, whether state-owned or privately owned, that contain information relevant to the instant litigation. As discussed, the media at issue will almost certainly contain confidential state or private personal information that is wholly unrelated to the litigation. Although the risk of improperly exposing such information, standing alone, might not preclude the employment of forensic imaging in all cases, the forensic imaging must be premised on an interest significant enough to override that risk. Such an interest is not demonstrably present in this case.

In its memorandum opinion of October 9, 2007, the district court explained that it issued the contested orders because it believed that defendants had failed to comply with various discovery orders and had not properly preserved relevant ESI throughout the course of this litigation. The record is not sufficient for this court to question those conclusions. Even so, the record lacks evidence that defendants have intentionally destroyed relevant ESI in the past, and nothing in the record indicates that defendants are unwilling, or will refuse, to preserve and produce all relevant ESI in the future. Furthermore, forensic imaging is not the only available means by which the district court may respond to what it perceives to be discovery misconduct. The district court maintains authority to impose sanctions for discovery violations under the federal rules and pursuant to its inherent powers. Although we take no position regarding the propriety of sanctions in this case, such measures can be less intrusive than forensic imaging, and it is not apparent from the record that the district court has exercised its sanctioning authority. In fact, the district court expressly reserved discussion of sanctions in its October 9, 2007 opinion.

Aside from these privacy and confidentiality considerations, this case raises other obvious issues that counsel against the forensic imaging procedures ordered by the district court. As directives to state officials, these orders implicate federalism and comity considerations not present in typical civil litigation. Many of the computers subject to the orders are in the custody of high ranking state officials, and these computers will contain information related to confidential state matters. Further, the orders call for federal law enforcement officers to accompany plaintiffs' computer expert into state agencies—and, in some cases, the homes and offices of state officials—to effect the imaging. These procedures clearly do not take adequate account of federalism and comity considerations. If the use of federal law enforcement officers in matters of civil discovery is proper under some circumstances, those circumstances are not present here.

Certainly, state officials are not immune from complying with federal discovery mandates. However, where less intrusive means are available to address the perceived discovery violations of state parties, those means should be employed before resorting to inherently intrusive measures like forensic imaging, especially in cases where there is no evidence of purposeful or intentional destruction of relevant ESI. In light of the significant confidentiality and federalism concerns present in this case, the district court's forensic imaging orders constitute the type of "demonstrable

abuse of discretion" that warrants mandamus relief. *See In re Wilkinson*, 137 F.3d 911, 914 (6th Cir. 1998). The third mandamus factor thus weighs in favor of granting the writ.

Finally, the fifth mandamus factor weighs in favor of mandamus relief. This case involves important issues related to electronic discovery and forensic imaging. It also raises issues of federalism and comity that are not present in typical civil litigation. Addressing these issues now serves to provide district courts with guidance on such matters in the future.

For the foregoing reasons, we grant defendants' petition for mandamus and set aside those provisions of the district court's November 15, 2007 and November 19, 2007 orders that require the forensic imaging of state-owned and privately owned computers, including the provisions that require the U.S. Marshal or his designee to assist plaintiffs' computer expert in the execution of the orders. We recognize that the two contested orders also contain provisions related to the inspection of defendants' computer system. We decline to address those provisions to the extent that those provisions can be executed in a manner consistent with this opinion and without undue intrusion.

---

**CONCURRING**

---

R. GUY COLE, JR., Circuit Judge, concurring. I concur in the majority's thoughtful opinion and write separately only to recognize the district court's efforts to resolve this extensive and complex proceeding, which has been made more difficult by Defendants' repeated delays and the institutional inefficiencies that plague the TennCare system.

This case has been pending for ten years. Since spring 2006 alone, the district court has overseen a discovery process that has included nine hearings and conferences, generating a record that spans more than 1,700 transcript pages. After finding that Defendants repeatedly violated their agreements set forth in the Consent Decree, breached their agreement with Plaintiffs regarding the dates for ESI discovery, and ignored the district court's directions to provide ESI to Plaintiffs, the court understandably concluded that extraordinary action was necessary to preserve potentially relevant ESI. And I would ordinarily defer to the discretion of the district court, which has had the arduous job of managing this difficult case – along with another branch of TennCare litigation – for the past decade.

This case is unique, however, in that the court's order includes the forensic imaging of computers in the custody of individuals not party to this matter, and that the order may lead to confrontations between federal marshals and state officials. Under these circumstances, I agree with the majority that, without evidence that Defendants intentionally destroyed relevant ESI in the past or that they are affirmatively unwilling to preserve all relevant ESI in the future, the district court should first employ less intrusive means to address the perceived discovery violations.

It is clear that the district court's focus has been to assist the parties in forging a solution that would ensure that Tennessee's children receive the benefits owed to them under the Consent Decree and federal law. Defendants' continual noncompliance and acrimonious litigation practice has unfortunately steered this case away from such goal, with the costs borne by the judicial system and the citizens of Tennessee. The district court has thus far reserved the exercise of its wide discretion to hold Defendants in contempt or to impose monetary sanctions. If the district court resorts to such measures and Defendants nevertheless continue to disregard their undisputed duty to preserve and produce relevant ESI, the preservation order at issue in this case, in my view, may no longer be considered inappropriate.