**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

CHRISTOPHER D. VISNIC, MITCHELL WEISS, DARRYL PIENING, NICHOLAS G. SUDARIC, AMANDA C. MERRELL and JENNIFER PHILLIPS,

)
)
)
)
)

Plaintiff,

)
)

v.

)
)

C.A. No. 2022-0202-NAC

SEEGRID CORPORATION, JAMES H. ROCK STEVEN F. KAPLAN, DAVID MOUNT, JOSEPH LUCOT, and DAVID S. SHAPIRA,

)
)
)
)
)
)

Defendants.

)

**ORDER DENYING PLAINTIFFS'
MOTION TO COMPEL FORENSIC AUDIT**

WHEREAS:

1. Plaintiffs assert claims concerning Seegrid Corporation's ("Seegrid") Stock Incentive Plan in its original 2015 form, and as amended in 2016 ("Amended Plan"). Count II alleges Seegrid breached the Amended Plan by, among other things, repurchasing Plaintiffs' shares "at prices that were not in good faith, and, in fact, well below any reasonable estimate of Fair Market Value." Dkt. 20 ¶¶ 221-227.

2. To prove that claim, Plaintiffs sought discovery of Seegrid's financial forecasts and projections. Specifically, Plaintiffs requested any financial forecasts or projections Seegrid shared with non-party Box Robotics in connection with the former's acquisition of the latter ("Box Transaction"). Plaintiffs hope to use those forecasts and projections ("Box Transaction Projections") to determine how Seegrid

1

justified a $6.76 per share valuation of its stock in the Box Transaction, while pricing Plaintiffs' Seegrid stock at $1.90 per share six months later.

3. Seegrid produced numerous financial forecasts and projections, including some made in connection with various contemplated and realized transactions. But Defendants did not produce any Box Transaction Projections. Instead, Defendants explained the Box Transaction was an "acqui-hire" driven by Seegrid's desire to hire Box's two founders rather than any interest in the actual company. Thus, Defendants represented that Seegrid did not generate any valuations or projections to consummate the Box Transaction and thus no Box Transaction Projections exist that could be produced.

4. Plaintiffs did not believe Defendants and repeatedly pressed for production of Box Transaction Projections. The parties discussed the issue over several months and Defendants (1) conducted additional targeted discovery searches based on Plaintiffs' requests; (2) disclosed the contents of Seegrid's "Box Diligence Folder"; and (3) interviewed the individuals involved in the Box Transaction. *See* Dkt. 149, Exs. B-I. Nevertheless, Defendants never produced any Box Transaction Projections, maintaining such documents did not exist.

5. Unconvinced, Plaintiffs filed the instant motion to compel a forensic audit of Seegrid's corporate records ("Motion").

NOW, THEREFORE, the Court having carefully considered the Motion, and the parties' arguments with respect thereto, IT IS HEREBY ORDERED, this 29th day of October 2025, as follows:

2

6.     Generally, a party has a right to request any relevant, non-privileged documents and can move to compel discovery if production is not forthcoming.  Given the temporal proximity between the Box Transaction and Seegrid's purchase of Plaintiffs' shares, Plaintiffs insist any Box Transaction Projections are uniquely relevant to their purchase price claim.  Defendants admit that any extant Box Forecasts would be relevant. *See* Dkt. 149 ¶ 29.

7.     Yet, the Court cannot "compel a litigant to produce documents it does not have[.]" *E.g.*, *Fitzgerald v. Cantor*, 1998 WL 842278, at *1 (Del. Ch. Nov. 16, 1998).  This Court has repeatedly denied motions to compel where the non-movant "represents it produced all [responsive] documents that exist." *E.g.*, *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014, at *1 (Del. Ch. July 1, 1996); *see Mitchell Lane Publishers, Inc. v. Rasemas*, 2014 WL 4693366, *2 (Del. Ch. Sept. 5, 2014).  Here, Defendants have represented that no Box Transaction Projections exists.

8.     Defendants submitted several affidavits supporting their assertion that no Box Transaction Projections exist. *See* Dkt. 149, Ex. A ¶¶ 5-8; Ex. L ¶¶ 1, 4-7; Ex. M 1, 4-7.  These affidavits further support denying the Motion. *See Kaye v. Pantone, Inc.*, 1983 WL 18012, *2 (Del. Ch. Mar. 28, 1983).  Plaintiffs correctly point out that these affidavits come from individuals affiliated with Seegrid.  Yet, Plaintiffs cite no contrary evidence suggesting Box Transaction Projections exist, other than speculation based on Seegrid's past-practices. *See* Dkt. 151 ¶¶ 6-15; Dkt. 149 ¶ 23 ("Plaintiffs have identified no produced documents or deposition testimony from any of the nine [] Seegrid deponents . . . suggesting there are any unproduced projections

3

or forecasts related to the Box acqui-hire."). *See also Roberts v. Kennedy*, 141 A. 319, 320 (Del. Ch. 1926) ("a mere speculative possibility cannot be allowed to overcome [] positive testimony."); *Magid v. Acceptance Ins. Companies, Inc.*, 2001 WL 1497177, at \*8 (Del. Ch. Nov. 5, 2001) (holding a party "cannot substitute unsupported conclusory assertions for evidence."). The authorities Plaintiffs cite to suggest the Court reject the affidavits are distinguishable. *See Wickkiser v. Wright*, 1990 WL 127865, at \*2 (Del. Super. Aug. 28, 1990) (holding an affidavit was "conclusory and self-serving, and [] therefore entitled to little weight," in part, because the affidavit *was internally contradictory regarding the at-issue fact*); *Brown v. Wiltbank*, 2010 WL 892069, at \*3 (Del. Ch. Feb. 22, 2010) (holding a "self-serving" affidavit "does not constitute *clear and convincing evidence* of an oral contract," not that it was irrelevant (emphasis added)).

9. Plaintiffs' speculation does not justify ordering a third-party forensic audit, which is indisputably more burdensome than a typical motion to compel. *See Summit Fire & Security LLC v. Kolias*, 2022 WL 3572827, at \*2-3 (Del. Ch. Aug. 19, 2022). The sparse on-point Delaware caselaw suggests such audits are only warranted when the non-movant has repeatedly been uncooperative in discovery and there is a substantial risk of spoliation or there exists other relatively exceptional circumstances warranting the relief. *See id.*; *DG BF, LLC v. Ray*, 2021 WL 5436868, at \*2-3, 6 (Del. Ch. Nov. 19, 2021).

10. Indeed, the federal authorities on which Plaintiffs rely explicitly held "mere skepticism that an opposing party has not produced all relevant information is

not sufficient to warrant drastic electronic discovery measures[,]" including a forensic audit. *E.g., John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (citing *McCurdy Group, LLC v. Am. Biomedical Group, Inc.,* 9 Fed. Appx. 822, 831 (10th Cir. 2001)); *see France v. Chippewa County*, 2021 WL 11431784, at *2 (W.D. Mich. Nov. 22, 2021) (only ordering a forensic audit after finding movant did not base its request on mere speculation).  Instead, Plaintiffs' authority supports the position that forensic audits should only be ordered where (1) there is a risk that evidence will be or has been destroyed; or (2) the non-movant's prior discovery efforts have been significantly insufficient or uncooperative. *See John B.*, 531 F.3d at 460; *France*, 2021 WL 11431784, at *1-2; *Peskoff v. Faber*, 244 F.R.D. 54, 58-61 (D.D.C 2007); *Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 5, 13-14 (D.D.C. 2009).

11.     Plaintiffs do not argue, and there is no evidence indicating, that Defendants have destroyed evidence or are likely to do so in the future. *See* Dkt. 140; Dkt. 151.  This alone suggests that Plaintiffs' Motion should be denied. *See France*, 2021 WL 11431784, at *1 ("[C]ourts rarely compel the use of forensic imaging unless a party can demonstrate either that evidence has been destroyed or a real danger that it will be." (internal quotes omitted)); *DG BF*, 2021 WL 5436868, at *5-6.

12.     Further, Plaintiffs do not meaningfully challenge the sufficiency of Defendants' discovery efforts. *See* Dkt. 140; Dkt. 151.  The only specific instance of non-cooperation Plaintiffs flag is Defendants' "failure to turn over the diligence folder responsive to requests propounded in March 2024."  This falls well short of the repeat violations of court issued discovery orders that justified a forensic audit in *DG BF*.

*See* 2021 WL 5436868, at *6. Moreover, Defendants have since produced the entire Box Diligence Folder, which did not contain any Box Transaction Projections. *See* Dkt. 149, Ex. J.

13. Thus, Plaintiffs have not shown that there is a risk of spoilation or that Defendants flouted discovery rules or refused to participate in the discovery process. As such, according to Plaintiffs own authorities, a forensic audit is not warranted, and the Motion should be denied. All Plaintiffs are left with is their assertion that "it remains highly unlikely" that no Box Transaction Projections exist given Seegrid's practices concerning other transactions and industry norms. Dkt. 140 ¶¶ 13-14; *see* Dkt. 151 ¶¶ 9-10. Yet, Defendants proffer a reasonable explanation, supported by affidavits, for why the Box Transaction was different than Seegrid's other acquisitions—namely, the Box Transaction was an "acqui-hire" driven solely by Seegrid's desire to hire Box's founders. *See* Dkt. 149 ¶¶ 6, 20, 25, 28; *id.*, Ex. A ¶¶ 2-4; Ex. L ¶¶ 1-3; Ex. M ¶¶ 1-3. Given the Box Transaction's nature, the major participants each affirmed no Seegrid projections or valuations were necessary to close the deal. *See id.*, Dkt. A. ¶¶ 1, 4-7, 10; Ex. L ¶¶ 1, 5-9; Ex. M ¶¶ 1, 5-9. Defendants' representation that no Box Transaction Projections exist comports with that understanding. Further, as discussed, Plaintiffs efforts to discredit those affidavits fall flat.

14. Therefore, the Court concludes Plaintiffs have not shown that a third-party forensic audit of Seegrid's electronic records is justified. The Motion is denied.

15. Anticipating that result, Seegrid seeks its costs and fees incurred in opposing the Motion pursuant to Court of Chancery Rule 37(a)(4)(B). *See* Dkt. 149 ¶¶ 38-41. Seegrid argues Plaintiffs' Motion "was not substantially justified" because it (1) lacked a factual basis; and (2) "offer[ed] only tenuous legal support . . . citing a single in-state case [] [] which declined to grant a forensic audit." *Id.*

16. If a motion to compel discovery is denied:

> the Court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney advising the motion or both of them to pay the party [] [] who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the Court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Ct. Ch. R. 37(a)(4)(B). Rule 37(a)(4)'s plain text "requires that an opportunity for a hearing be afforded before awarding attorney's fees and costs." *Monsanto Co. v. Aetna Cas. And Sur. Co.*, 1990 WL 200471, at *2 (Del. Super. Dec. 4, 1990); *see Pharmerica Long Term Care Inc. v. New Castle RX, LLC*, 2010 WL 5130746, at *2, 4-5 (Del. Ch. Dec. 8, 2010).

17. Accordingly, the Court defers its ruling on whether Seegrid is entitled to an award of reasonable fees and expenses until after the parties are afforded an opportunity to be heard on the issue. The parties will contact chambers to schedule a hearing on the issue.

*/s/ Nathan A. Cook*
Vice Chancellor Nathan A. Cook

7