*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: PROFESSIONALS DIRECT INSURANCE
COMPANY,

                      *Petitioner.*

No. 08-4440

———————————

On Petition for Writ of Mandamus.
No. 06-00240—George C. Smith, District Judge.

Argued:  April 30, 2009

Decided and Filed:  August 24, 2009

Before:  MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Kevin Robert McDermott, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Petitioner. James E. Arnold, JAMES E. ARNOLD & ASSOCIATES, Columbus, Ohio, for Respondent.

———————————

## OPINION

———————————

      BOYCE F. MARTIN, JR., Circuit Judge.  Professionals Direct Insurance Company petitions this Court for a writ of mandamus to vacate a discovery order issued by the district court.  Professionals Direct contends that the order erroneously compels it to produce documents protected by the federal work-product doctrine and by Ohio's attorney-client privilege.  Because we find that Professionals Direct has not met the heavy burden required to justify a writ of mandamus, we DENY its petition.

1

I.

Professionals Direct is the malpractice insurer for Wiles, Boyle, Burkholder & Bringardner Co., a Columbus, Ohio law firm specializing in insurance defense. In 2001, Wiles was retained by Illinois National Insurance Company to defend a suit against an employee of one of Illinois National's insureds. The defense was not successful and the plaintiffs obtained a large jury verdict, leaving Illinois National responsible for $8,531,488.68 in damages. The trial court entered judgment December 30, 2002. Wiles filed a motion for judgment not withstanding the verdict or, alternatively, for a new trial on January 15, 2003. The trial court denied the motion as untimely, concluding that it had been filed outside of the 14-day period provided in the Ohio rules of civil procedure. Wiles appealed this decision to the Ohio Court of Appeals, and then to the Ohio Supreme Court.

In late 2003, while the Ohio Supreme Court's decision was pending, Wiles applied to renew its malpractice insurance policy with Professionals Direct. In its application for renewal Wiles indicated that it was not aware of any circumstances, acts, or omissions during the prior twelve months that "could reasonably be expected to result in a claim to Professionals Direct."

The Ohio Supreme Court unanimously affirmed the trial court's ruling on August 18, 2004. On September 1, Wiles notified Professionals Direct that Illinois National had a potential malpractice claim against it. Professionals Direct acknowledged Wiles's notice of a potential malpractice claim, but reserved the right to deny the claim pending an investigation into the circumstances under which it arose. At this time, Professionals Direct retained outside counsel to advise it on potential defenses to coverage and to explore the possibility of seeking a declaratory judgment that Wiles was not covered by the plan. In October 2004, Illinois National settled the underlying claim and offered to settle its potential malpractice action for $5 million. Professionals Direct represented Wiles in settlement negotiations and executed an agreement tolling the statute of limitations to facilitate settlement discussions.[1]

---

[1] These discussions proved fruitless. Illinois National later raised its demand to $10 million, and, on May 19, 2006, Illinois National sued Wiles for malpractice in the Franklin County Court of Common Pleas.

On August 19, 2005, Professionals Direct sent a second letter to Wiles regarding its notice of a potential malpractice claim. This letter again reserved Professionals Direct's right to exclude the claim from coverage and asked that Wiles provide a written explanation for the delay in reporting Illinois National's potential claim and its failure to disclose this potential claim in its application for renewal. Attorneys representing the parties attended a mediation in November, but failed to resolve the dispute, and in December Professionals Direct's attorney informed Wiles's attorney that Professionals Direct was planning to file a declaratory judgment action in the near future. On March 23, 2006, Professionals Direct informed Wiles that it interpreted the malpractice policy to exclude coverage because Wiles failed to give notice of Illinois National's potential claim either before the expiration of the 2002-03 policy or in its application for renewal. Professionals Direct filed an action for a declaratory judgment in the United States District Court for the Southern District of Ohio six days later.

After the district court denied Wiles's motion to dismiss, Wiles filed a counterclaim against Professionals Direct, alleging breach of contract and bad faith in processing the Illinois National claim, seeking "damages measured by any amounts ultimately owed to Illinois National for the Illinois National claims, without regard to policy limits," as well as punitive damages, and attorneys' fees. The district court denied Professionals Direct's motion to dismiss the counterclaims and its subsequent motion for reconsideration. During discovery Wiles requested that Professionals Direct produce all documents relating to its bad faith claim. However, Professionals Direct refused to produce a number of documents from its coverage file, claiming that they were protected by the work-product doctrine and attorney-client privilege. After an *in camera* examination of the documents, the magistrate judge overseeing discovery ordered that Professionals Direct disclose many of the documents it claimed to be privileged.[2]

---

[2]Professionals Direct claims that most of the documents are covered by both theories. However, privilege log pages 003648-003649 are claimed only as work product, and pages 000075, 000899, 000904 and 000905-000906, 000909 and 003564, and 003635 are claimed only under attorney-client privilege.

Professionals Direct filed objections to this discovery order, claiming that it wrongly required the disclosure of nondiscoverable information in violation of the attorney-client privilege and the work-product doctrine. It also filed a motion to certify questions relating to the discovery order to the Ohio Supreme Court, a motion to bifurcate proceedings for the declaratory judgment and the counterclaim, and a motion to stay production of the documents. The district court denied all of Professionals Direct's motions. Of the magistrate's discovery order, it stated simply: "The Court has reviewed the Magistrate Judge's Discovery Order in light of Plaintiff's Objections, and finds that the Magistrate Judge's Discovery Order is neither clearly erroneous, nor contrary to law."[3] Professionals Direct then filed a petition for a writ of mandamus from this Court to vacate the discovery order. Finding that it was not appropriate to deny the petition without an answer, a panel of this Court directed that Wiles respond as required by Federal Rule of Appellate Procedure 21(b)(1), and stayed production of the documents pending a decision on the merits of Professionals Direct's petition.

## II.

This Court has authority to issue a writ of mandamus under 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21. However, a writ of mandamus is an extraordinary remedy that we will not issue absent a compelling justification. Traditionally, writs of mandamus were used "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Accordingly, "[t]he writ of mandamus is not to be used when the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964). Rather, "only exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967). And, because mandamus is a discretionary remedy, a Court may decline to issue the writ if it finds that it would not be "appropriate under the circumstances" even if the

---

[3]Because the district court adopted the magistrate's order without discussion, we will refer to the magistrate's order directly in our analysis.

petitioner has shown he is "clear[ly] and indisputabl[y]" entitled to it. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004).

> In evaluating whether to issue a writ of mandamus, we consider five factors:
>
> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal after a final judgment; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order contains an oft-repeated error, or manifests a persistent disregard of the federal rules; (5) whether the district court's order raises new and important problems, or legal issues of first impression.

*John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).  Not every factor need apply (four and five tend to point in opposite directions, for example), but together they must present extraordinary circumstances to justify issuance of the writ. *In re Perrigo*, 128 F.3d 430, 435 (6th Cir. 1997).

## III.

With narrow exceptions, a party has no right of appeal until after a final judgment on the merits, and mandamus is not intended to substitute for appeal after a final judgment.  Thus, a court may only exercise its mandamus jurisdiction when a party is in danger of harm that cannot be adequately corrected on appeal and has no other adequate means of relief.  The first two factors in the five-factor test are aimed at preventing the end-run around the final judgment rule that might otherwise occur.  And, as a result, courts generally ask whether the first two prongs of the test have been satisfied before addressing the merits of the errors alleged in the petition. *See, e.g.*, *In re Gregory Lott*, 424 F.3d 446, 449-52 (6th Cir. 2005).  Here, Professionals Direct has shown both that it is in danger of irreparable harm and that it has no other adequate means of relief.

### 1. Whether PDIC has no Other Adequate Means of Relief

First, Professionals Direct has no other adequate means of relief. Discovery orders are not reviewable on an interlocutory basis under 28 U.S.C. § 1292 or under the collateral order doctrine. *John B.*, 531 F.3d at 458. And Professionals Direct cannot necessarily obtain review by withholding the documents and seeking review of a contempt sanction. Nonparties can appeal any contempt order, but parties cannot appeal civil contempt orders and thus do not have a clear alternative means of relief. *See Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.3d 1486, 1491 (9th Cir. 1989) ("Typically, a nonparty aggrieved by a discovery order must subject himself to civil contempt to gain appellate review. Civil contempt of a party, however, generally is not immediately appealable. Thus, a party to litigation normally must await final judgment to seek review of a discovery order. Accordingly, mandamus is the only method available . . . to obtain review."). Because Professionals Direct is a party to this suit,[4] mandamus is an appropriate means of review.

### 2. Whether PDIC Will Suffer Irreparable Harm

Second, an erroneous forced disclosure of confidential information could not be adequately remedied on direct appeal because a court cannot restore confidentiality to documents after they are disclosed. *Lott*, 424 F.3d at 451-52 ("If the district court's discovery order is in error and Lott's counsel is wrongfully forced to disclose privileged communications, there is no way to cure the harm done to Lott or to the privilege itself."); *see generally* 16 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3935.3 ("Writ review is rather frequently provided in more general terms because of the desire to protect against discovery of information that is claimed to be protected by the Constitution, privilege, or more general interests in privacy."). Accordingly, we proceed to the merits of Professionals Direct's petition.

---

[4] This distinguishes *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 474 n.7 (6th Cir. 2006), which declined to exercise mandamus jurisdiction to review a discovery order compelling production of documents held by a nonparty.

IV.

The third factor in the five factor test is whether the district court's order is "clearly erroneous as a matter of law." Professionals Direct contends that the district court committed clear error in its application of both the federal work-product doctrine and Ohio's attorney-client privilege. We do not agree.

*A. Work-product doctrine*

The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. *See Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947). The work-product doctrine is a procedural rule of federal law; thus, Federal Rule of Civil Procedure 26 governs this diversity case. *In re Powerline Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Rule 26(b)(3) protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative." *Id.* The lone issue is whether the disputed documents were prepared in anticipation of litigation.

To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, we ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, *id.* at 598-99, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." *Roxworthy*, 457 F.3d at 595 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)).

The magistrate found that the earliest litigation could reasonably have been anticipated was August 2005—when Professionals Direct sent its second reservation of rights letter, asked Wiles to explain its failure to disclose the Illinois National claim in

its renewal application, and retained counsel in Ohio. At this time, the magistrate found, Professionals Direct was "seriously evaluating a declaratory judgment action," and that from this point on, Professionals Direct's attorneys "had dual functions. They were advising [Professionals Direct] on the business decision of whether to deny coverage, and they were doing legal work in anticipation of litigation."[5]

Professionals Direct does not contest these findings; rather, it contests the magistrate's application of the work-product doctrine to them. In essence, its position is that the documents prepared by its attorneys while having "dual function" necessarily have a dual *purpose* and are thus immune from discovery. But that does not follow. The fact that Professionals Direct reasonably anticipated litigation at this point does not answer whether it prepared *the disputed documents* "because of" litigation or not. Making coverage decisions is part of the ordinary business of insurance and if the "driving force" behind the preparation of these documents was to assist Professionals Direct in deciding coverage, then they are not protected by the work-product doctrine. *Roxworthy*, 457 F.3d at 595. As the magistrate recognized, whether the documents at issue here were in fact prepared in anticipation of litigation can only be determined from an examination of the documents themselves and the context in which they were prepared. *Id.*

Here, after examining the disputed documents *in camera*, the magistrate refused to compel production of a number of them, either because he found they were prepared in anticipation of litigation or were not relevant to Wiles's claim. The magistrate also ordered a number of documents produced. Based on the descriptions in the magistrate's order and Professionals Direct's privilege log, it appears these documents fall into three categories: (1) legal memoranda prepared before late August; (2) emails between Professionals Direct and outside counsel concerning the coverage decision; and (3) correspondence between employees of Professionals Direct or between Professionals Direct and its reinsurers regarding the coverage decision.

---

[5]This is consistent with the affidavit Professionals Direct attached to its objections to the discovery order, which stated that it obtained outside counsel "to provide legal advice and services in regards to insurance coverage issues and coverage litigation related to the Wiles malpractice claim."

Professionals Direct has not identified any legal error in the magistrate's discussion of the federal work-product doctrine. Nor has it shown clear error in the magistrate's application of the work-product doctrine to the documents at issue or in the factual findings on which that application was premised. The magistrate only ordered Professionals Direct to produce documents he found that were prepared "because of" the coverage decision rather than anticipated litigation or were prepared prior to the time Professionals Direct could reasonably anticipate litigation. On its face, this is a reasonable application of the work-product doctrine, and Professionals Direct has not produced evidence to make us conclude otherwise. Applying the work-product doctrine in this context is a difficult, fact-intensive task, and, while aspects of the magistrate's order may not be beyond question, Professionals Direct has failed to show that it is "clearly erroneous as a matter of law." *John B.*, 531 F.3d at 457.

### B. *Attorney-Client Privilege*

Ohio's attorney-client privilege is governed by both common law and statute. Here, the magistrate overseeing discovery held that Ohio's testimonial privilege statute, Ohio Rev. Code § 2317.02(A), did not apply, and that the disputed documents were discoverable under a common law exception to attorney-client privilege for claims involving allegations of bad faith. Professionals Direct argues that the magistrate committed clear error in failing to apply Ohio's testimonial privilege statute, and, alternatively, that the magistrate committed clear error in its application of Ohio's common law of attorney-client privilege. We reject both arguments.

### 1. *Statutory Privilege*

Professionals Direct advances two theories why the magistrate committed clear error in holding that Ohio's testimonial privilege statute does not apply. First, Professionals Direct argues that the magistrate clearly erred in holding that § 2317.02(A) does not apply to documents sought from a party during discovery but to attempts to compel an attorney to testify either at a deposition or at trial. Second, it argues that the magistrate ignored the effect of an amendment to § 2317.02(A) that made Ohio's testimonial privilege statute applicable to this case.

We reject Professionals Direct's first theory. As the magistrate here recognized, by its terms § 2317.02(A) applies to attorney testimony, not documents held by defendants. *State ex rel Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 996 (Ohio 2005) ("R.C. 2317.02(A), by its very terms, is a mere testimonial privilege precluding an attorney from testifying about confidential communications."); *Grace v. Mastruserio*, 2007 WL 2216080 at *3 (Ohio Ct. App. 2007) ("A plain reading of the statute clearly limits the statute's application to cases in which a party is seeking to compel testimony of an attorney for trial or at a deposition—as opposed to cases where a party is seeking to compel production of nontestimonial documents.").[6] Because Wiles does not seek to compel attorney testimony, § 2317.02(A) does not apply.

We also reject Professionals Direct's claim that the magistrate committed clear error in disregarding an amendment to § 2317.02.[7] This amendment did not become effective until October 31, 2007, after this suit was filed. Under Ohio law, statutes are presumed to be prospective in application—i.e. inapplicable to pending cases—absent express legislative instructions to the contrary. Ohio Rev. Code § 1.48; *Bd. of Comm'rs of Warren County v. City of Lebanon*, 540 N.E.2d 242, 244 (Ohio 1989); *Van Fossen v. Babcock & Wilcox Co.*, 522 N.E.2d 489, 495 (Ohio 1988). Professionals Direct argues that the amendment to § 2317.02(A) was procedural and thus not subject to Ohio's clear statement rule. But under Ohio law, if a statute is not expressly made retroactive in application, a court "need not, and may not" consider whether it is "procedural" or

---

[6] *Jackson v. Greger*, 462 N.E.2d 381 (Ohio 2006), which Professionals Direct relies upon, is not to the contrary. *Jackson* was a privilege waiver case interpreting the scope of § 2317.02(A). It did not involve the common law exception to the applicability of § 2317.02(A) that was established in *Boone v. Vanliner*, 744 N.E.2d 154 (Ohio 2001). Because § 2317.02 does not apply to *Boone* claims, *Jackson* is not relevant here. *Cf. Boone*, 744 N.E.2d at 157 ("The flaw in Vanliner's argument is that *McDermott* addresses client waiver of the privilege, whereas *Moskovitz* sets forth an exception to the privilege and is therefore unaffected by our holding in *McDermott*.").

[7] The amendment created § 2317.02(A)(2), which reads: "A person shall not testify in certain respects: . . . An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an *in camera* inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima facie showing of bad faith, fraud, or criminal misconduct by the client." The explanatory note to this amendment states: "The common law established in *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, and *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, is modified accordingly to provide for judicial review regarding the privilege." 2006 Ohio Laws File 198 (Am. Sub. S.B. 117, section 6).

"substantive" in nature. *Bd. of Comm'rs of Warren County*, 540 N.E.2d at 244; *see also Erie Cty. Drug Task Force v. Essian*, 610 N.E.2d 1181, 1182 n.2 (Ohio Ct. App. 1992) ("We are aware of a line of cases which seems to exempt procedural and remedial statutes from this presumption. Our view is that *Van Fossen* and *Warren Cty. Bd. of Comm'rs* implicitly overrule those cases.") (citations omitted).

Neither the text of the amendment nor the committee notes accompanying it expressly makes § 2317.02(A) apply retroactively to pending cases. *See* S.B. 117, 126th Gen. Assem., Reg. Sess. (Ohio 2006). Thus, it does not apply in this case and we need not interpret its scope. *Cf. Scotts Co. v. Liberty Mutual Ins. Co.*, 2007 WL 1500899 at *3 (S.D. Ohio 2007) (observing that Ohio's clear statement rule would bar retroactive application of the amendments to § 2317.02); Amy Thomas, *SB 117 Amendments to R.C. 2317.02 Regarding Disclosure of Attorney-Client Communications in Insurer Bad Faith Litigation—Boone or Bust?*, 2 OHIO TORT L.J. 119 (2008) ("Based on the plain language of R.C. 2317.02(A)(2) as amended by SB 117, the SB 117 amendments will only apply prospectively."). Accordingly, we reject Professionals Direct's claim that the magistrate committed clear error in ruling that § 2317.02(A) does not apply.

### 2. Common Law Privilege

In *Boone v. Vanliner*, 744 N.E.2d 154 (Ohio 2001), the Ohio Supreme Court established a common law exception to Ohio's attorney-client privilege in cases involving allegations that an insurer denied an insured's claim in bad faith. *Boone* involved a suit by a truck driver against his commercial vehicle liability insurer after the insurer denied coverage for injuries he sustained in an accident. The plaintiff alleged that his insurer had denied coverage in bad faith and sought to discover the contents of his insurer's claims file to support his claim. His insurer refused to turn over a number of documents in the file, arguing they were either protected by attorney-client privilege or were non-discoverable attorney work product. After an *in camera* inspection of the documents, the trial court ordered the insurer to produce a number of them. *Id.* at 156. Vanliner appealed to the Ohio Court of Appeals, which reversed in part, and then appealed to the Ohio Supreme Court. Reasoning that "claims files materials that show

an insurer's lack of good faith in denying coverage are unworthy of protection," the Ohio Supreme Court held that the attorney-client privilege did not apply to documents containing evidence of bad faith on the part of an insurer. *Id.* at 158. It then ordered Vanliner to produce all claims file materials "related to the issue of coverage that were created prior to the denial of coverage." *Id.*

Here, the magistrate took the position that under *Boone* his duty was simply to identify when Professionals Direct denied coverage for the Illinois National claim, as this would enable him to identify which documents "related to the issue of coverage that were created prior to the denial of coverage." *Id.* Because Professionals Direct elected to defend Wiles under a reservation of rights and litigate the coverage issue instead of simply deny coverage, there was no coverage denial date. The magistrate took a practical approach to this issue, asking at what point Professionals Direct decided it would not cover the Illinois National claim. He selected March 23, 2006 as his "constructive denial date" because this was the day Professionals Direct informed Wiles that it was going to seek a declaratory judgment that the Illinois National claim was not covered. He then ordered Professionals Direct to produce all claims file documents that were produced prior to that date.

Professionals Direct argues that the magistrate committed clear error by failing to analyze each of the disputed documents individually to determine whether they contained evidence of bad faith and were thus "unworthy of protection." *Boone*, 744 N.E.2d at 158. But Ohio courts have read *Boone* more broadly than Professionals Direct claims. The leading Ohio Court of Appeals case, *Garg v. State Auto. Mut. Ins. Co.*, 800 N.E.2d 757 (Ohio Ct. App. 2003), read *Boone* to require the disclosure of all documents that "*may* cast light" on whether the insurer acted in bad faith. *Id.* at 763 (emphasis added); *see also Boone*, 744 N.E.2d at 156 ("The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that *may cast light* on whether the denial was made in bad faith.") (emphasis added).

This, we believe, is a reasonable application of *Boone*. Indeed, Professionals Direct's objections to the magistrate's discovery order echo those of the dissent in *Boone*: "The majority's holding is also startling for its practical effect. After today's decision, an insured need only *allege* the insurer's bad faith in the complaint in order to discover communications between the insurer and the insurer's attorney." *Boone*, 744 N.E.2d at 160 (Cook, J., dissenting) (emphasis in original). So, while Professionals Direct is correct to point out that some Ohio courts have applied *Boone* more narrowly, this is insufficient to show that the magistrate's application of *Boone* was "clearly erroneous as a matter of law."[8] *John B.*, 531 F.3d at 457.

## V.

As Professionals Direct appears to recognize, neither of the two remaining factors in the five- factor test applies with much force here. This case involves the application of two relatively well-developed areas of law to a discovery dispute between private parties; it does not involve "new and important problems" or "legal issues of first impression." *John B.*, 531 F.3d at 457. And, as discussed above, the discovery order does not contain a clear error, let alone show a "persistent disregard of the federal rules." *Id.*

## VI.

Having failed to show that any of the merits factors in the five-factor test weigh in its favor, Professionals Direct has not demonstrated that it is "clear[ly] and indisputabl[y]" entitled to a writ of mandamus, *Cheney*, 542 U.S. at 381, and we need not address whether relief is "appropriate under the circumstances." *Id.* Accordingly, we DENY Professionals Direct's petition for a writ of mandamus.

---

[8]To the extent Professionals Direct challenges the magistrate's use of a constructive denial date, we do not think this was clear error. An outright denial of a claim is not required in order to obtain discovery under *Boone*. *See, e.g.*, *Mundy v. Roy*, 2006 WL 522380 at *4, *5 n.7 (Ohio Ct. App. 2006). And the gravamen of Wiles's complaint is that Professionals Direct injured it by refusing to pay its claim in bad faith. It speaks, for example, of "Professionals Direct's wrongful decision to deny coverage," and the relief it seeks is malpractice coverage for the Illinois National claim and all damages and costs relating to Professionals Direct's refusal to provide malpractice insurance. Accordingly, it was reasonable for the magistrate to grant Wiles discovery up to the date upon which he found that Professionals Direct made its coverage decision.