RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0428p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 09-5598
*In re*:  LIFE INVESTORS INSURANCE COMPANY
OF AMERICA; AEGON USA, INC.,
                                      *Petitioners.*

_____

Nos. 09-5868/6357
ANTHONY E. GOOCH,
                                      *Plaintiff-Appellee,*


v.


LIFE INVESTORS INSURANCE COMPANY OF
AMERICA and AEGON, INC.,
                                      *Defendants-Appellants.*

Nos. 09-5598/5868/6357

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 07-00016—William J. Haynes, Jr., District Judge.

Argued:  November 19, 2009

Decided and Filed:  December 17, 2009

Before:  MARTIN, BOGGS, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Markham R. Leventhal, JORDEN BURT LLP, Miami, Florida, for Appellants. Thomas O. Sinclair, LEITMAN SIEGAL PAYNE & CAMPBELL, P.C., Birmingham, Alabama, for Appellee.  **ON BRIEF:**  Markham R. Leventhal, Julianna Thomas McCabe, Richard J. Ovelmen, JORDEN BURT LLP, Miami, Florida, Thomas H. Dundon, A. Scott Ross, NEAL AND HARWELL, PLC, Nashville, Tennessee, for Appellants.  Thomas O. Sinclair, Miles Clayborn Williams, LEITMAN SIEGAL PAYNE & CAMPBELL, P.C., Birmingham, Alabama, Eric L. Buchanan, ERIC BUCHANAN & ASSOCIATES, Chattanooga, Tennessee, for Appellee.

1

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge.  In Case Number 09-5598, defendants-petitioners Life Investors Insurance Company of America and its parent company AEGON USA, Inc.[1] seek various forms of mandamus relief from the district court's orders and general case management approach.  In Case Number 09-5868, the Company appeals the order of the district court enjoining the Company from continuing with the settlement process in a parallel class action in Arkansas state court.  Finally, seven days prior to oral argument on Case Numbers 09-5598 and 09-5868, the Company filed a third appeal, Case Number 09-6357, this time taking issue with the district court's denial without prejudice of the Company's motion to dissolve a preliminary injunction.  For the reasons set forth below, we **DENY** mandamus relief in No. 09-5598, **REVERSE** and **VACATE** the injunction in No. 09-5868, and **AFFIRM** in No. 09-6357.

**I.**

Because this case comes before us on interlocutory review, the facts do not provide the fixed target that we prefer when setting forth the factual and procedural history of a case on appeal.  Thus, we provide only a brief summary of the allegations and an overview of where the litigation stands and then incorporate additional facts where necessary in the analysis.

The substance of this case revolves around how the Company administers supplemental "cancer only" insurance policies that it has sold to individuals, such as plaintiff Anthony Gooch, and specifically how it calculates reimbursement for certain costs.  Although some of the reimbursements provided under the policy are in fixed amounts, other reimbursements are keyed to the "actual charges"[2] incurred by the

_____

[1]Life Investors Insurance Company of America now trades as Transamerica Life Insurance Company.  For purposes of this opinion, we refer to this entity and AEGON collectively as the Company.

[2]The term "actual charges" comes directly from the insurance policy, and it is the meaning of this term that is the heart of this case.

insured for certain services, such as radiation, chemotherapy, or ambulance transportation.

The Company contends that for several years it accepted, as proof of "actual charges," statements from hospitals and doctors that set forth "list prices" for a given treatment or service. The Company further contends that these "list prices" are pure fiction because they are not actually billed to anyone, and no one actually pays those prices. Instead, the Company contends, hospitals and doctors routinely agree to accept a lesser amount from the patient's primary insurer, similar to the difference between the sticker price for a car and the price that people actually pay for that car. Thus, the Company claims that it was erroneously providing windfalls to its customers by reimbursing them based on the list price when they actually only incurred costs based on the amount the doctor or hospital agreed to accept. The Company alleges that, after it realized this error during the course of an investigation into why premiums were rising, it changed its practice to require a showing of actual proof of loss for reimbursement. Now, the Company claims that instead of reimbursing the insured based on the list price, the Company reimburses based on whatever the medical provider agreed to accept as payment in full. The Company asserts that this is in complete accord with the terms of the insurance policies.

Gooch disagrees. In short, he contends that the policies require that the Company reimburse policyholders for the amount the medical provider says it is owed, regardless of whether the provider subsequently agrees to accept less from the insured's primary insurer. He further contends that, even if the provider agrees to accept less than its full price from an insurance company, the individual still remains liable for the difference. Thus, Gooch asserts that the Company breached its policy when it began refusing to reimburse for whatever amount the provider initially says that it is owed.

Gooch therefore brought this suit seeking declaratory, injunctive, and monetary relief from the Company's alleged breach of the insurance contract. He also seeks to pursue these claims on behalf of a nationwide class of individuals that had purchased identical policies from the Company. Gooch filed his complaint on March 30, 2007.

The early months of the case saw a flurry of activity, including a motion to dismiss from the Company and motions for partial summary judgment on the meaning of the policy, a preliminary injunction, and class certification from Gooch. However, the case has languished for more than two years, with numerous partial or complete stays punctuated by random bursts of rulings, orders, and discovery. From our review of the docket sheet, it appears that a substantial amount of discovery and pretrial filings remains before this matter is ready for trial.

## II.

### A.      Case Number 09-5598 - Petition for Writ of Mandamus

In May of 2009, the Company petitioned this Court for a writ of mandamus. The issues for which the Company seeks mandamus relief may be broken up into three general categories: (1) the district court's ruling granting partial summary judgment to Gooch on the interpretation of the policy, and its treatment of that ruling as "law of the case"; (2) the district court's decision to defer ruling on the Company's motion to dissolve a preliminary injunction, requiring the Company to continue reimbursing Gooch according to the old method, until a hearing on class certification and permanent class-wide injunctive relief; and (3) the district court's various discovery rulings, which the Company describes as one-sided. Before we address these three issues, however, we review the general standards concerning the availability of mandamus relief, taken from our recent decision in *In re Professionals Direct Insurance Co.*, 578 F.3d 432 (6th Cir. 2009):

> This Court has authority to issue a writ of mandamus under 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21. However, a writ of mandamus is an extraordinary remedy that we will not issue absent a compelling justification. Traditionally, writs of mandamus were used "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Accordingly, "[t]he writ of mandamus is not to be used when the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964). Rather, "only exceptional circumstances

amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967). And, because mandamus is a discretionary remedy, a Court may decline to issue the writ if it finds that it would not be "appropriate under the circumstances" even if the petitioner has shown he is "clear[ly] and indisputabl[y]" entitled to it. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381(2004).

In evaluating whether to issue a writ of mandamus, we consider five factors:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal after a final judgment; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order contains an oft-repeated error, or manifests a persistent disregard of the federal rules; (5) whether the district court's order raises new and important problems, or legal issues of first impression.

*John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). Not every factor need apply (four and five tend to point in opposite directions, for example), but together they must present extraordinary circumstances to justify issuance of the writ. *In re Perrigo*, 128 F.3d 430, 435 (6th Cir. 1997).

With narrow exceptions, a party has no right of appeal until after a final judgment on the merits, and mandamus is not intended to substitute for appeal after a final judgment. Thus, a court may only exercise its mandamus jurisdiction when a party is in danger of harm that cannot be adequately corrected on appeal and has no other adequate means of relief. The first two factors in the five-factor test are aimed at preventing the end-run around the final judgment rule that might otherwise occur. And, as a result, courts generally ask whether the first two prongs of the test have been satisfied before addressing the merits of the errors alleged in the petition. *See, e.g.*, *In re Gregory Lott*, 424 F.3d 446, 449-52 (6th Cir. 2005).

578 F.3d at 437-38.

## 1.     Rulings Regarding Interpretation of the Insurance Policy

The central issue in this case is whether the Company's new approach to reimbursements is permissible under the language of the policy. It is not surprising, then, that this issue is the primary motivator for the Company's request for mandamus relief. The Company complains about the manner in which the district court has gone about interpreting the policy. We set forth the facts relevant to this issue below.

The Company responded to Gooch's complaint by moving to dismiss[3] on the basis that the four corners of the insurance policy precluded Gooch's claim. Gooch responded and also cross-moved for partial summary judgment on the interpretation of the policy, for a preliminary injunction requiring the Company to continue reimbursing him under the old process, and for class certification. Gooch submitted a significant amount of evidence in support of these motions.

The Company argued that Gooch's motions were premature, and the district court agreed. It stayed discovery for the most part, subject to reopening if the court found that it needed evidence to rule on the meaning of the policy. The court further ordered that, if it denied the motion to dismiss, the Company's responses to Gooch's motions would be due 150 days after the court ruled on the motion to dismiss. We presume that this 150-day window was to allow the parties to conduct the discovery necessary to complete the briefing on Gooch's motions.

Relatively little occurred over the next seven months while the district court considered the Company's motion to dismiss. Then, on March 6, 2008, the court issued a ruling on several of the outstanding motions, including Gooch's class certification, partial summary judgment, and preliminary injunction motions that it had previously indicated were stayed. The upshot of this combined ruling was that the district court

---

[3]The Company captioned its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment." The Company submitted documents and affidavits along with its motion, but only in support of a choice of law issue. Its argument on the interpretation of the insurance policy relied solely upon the text of the contract. The Company also indicated in its motion that it would not oppose the conversion of its motion into a motion under Rule 56 for summary judgment provided that it have the opportunity to supplement its motion with evidence.

agreed with Gooch's interpretation of the insurance policy. Importantly, the court partially relied upon matters outside of the pleadings and the four corners of the policy—the evidence submitted by Gooch—in coming to its conclusions, without having permitted the Company an opportunity to take discovery or offer any contradictory evidence.[4] The court therefore denied the Company's motion to dismiss, granted partial summary judgment in favor of Gooch, and entered a preliminary injunction requiring the Company to reimburse Gooch under its prior procedures. The court also certified the class that Gooch sought to represent.

The Company reacted defensively. It quickly moved, on March 18th, to set aside the class certification[5] and, on March 20th, to set aside the partial summary judgment. Approximately one month later, on April 11th, the court held a status conference. During that conference, the court, for reasons that are not apparent from the record, stayed all discovery indefinitely and vacated all pending deadlines.

In February 2009, approximately ten months after the April 11, 2008 status conference, the court entered an order vacating the partial summary judgment that it had entered for Gooch approximately one year earlier and that the Company had sought to vacate eleven months earlier. Nevertheless, approximately one month later, during a March 2009 status conference, the court announced that, although it had vacated the partial summary judgment to Gooch on the interpretation of the policy (which it had arrived at by relying, at least in part, on evidence submitted by Gooch without the Company having had the opportunity to submit rebutting evidence), it intended to treat its interpretation of the policy as the "law of the case."

---

[4] In its order denying the motion to dismiss, granting Gooch partial summary judgment, entering a preliminary injunction, and certifying the class, the court indicated that briefing on the summary judgment, injunction, and class certification motions was complete and that the issues were therefore ripe for decision. This was incorrect as the court had previously ordered that the Company's responses to Gooch's motions were not due until 150 days after it ruled on the motion to dismiss.

[5] The court set aside its prematurely issued class certification the next day, March 19th. However, the court only gave the Company forty-five days to respond to the motion to certify the class, as opposed to the 150 days originally provided. The Company complains that forty-five days was insufficient to conduct class discovery and respond to the motion. However, it appears that, as of today, the court still has not ruled on the class certification motion, more than one and one half years after it set aside its certification order, and class certification is not one of the issues about which the Company seeks mandamus relief.

It is in light of this fact pattern that the Company makes its first and most vehement request for mandamus relief.  It is clear from the Company's submissions on appeal that it is highly frustrated with the manner in which the district court has managed this case.  We do not find the Company's frustration altogether unreasonable, although our review of the record from the district court leads us to believe that the Company itself is not completely innocent with regard to the disjointed manner in which this case has progressed.

But, in any event, frustration with the manner in which a district court is managing a case is not grounds for mandamus relief.  Essentially, we are presented with (1) a premature entry of summary judgment that has now been mooted by a subsequent vacation of that summary judgment and (2) a court that indicates that it nevertheless intends to treat the substance of that mooted order, *i.e.* its reading of the insurance policy, as "law of the case."  As to the first situation, the entry of partial summary judgment, mandamus relief is clearly inappropriate as the district court corrected its own error.  Thus, we are left with the question whether the court's indication that it intends to treat its interpretation of the insurance policy as "law of the case" amounts to the wholesale "judicial usurpation of power" necessary to invoke our mandamus jurisdiction. *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 437 (citing *Will v. United States*, 389 U.S. 90, 95 (1967)).

Based on our review of the record, we do not interpret the district court's statement as invoking the formal "law of the case" doctrine.**[6]**  Instead, we interpret it as being a sort of shorthand legal slang to signal that the court simply does not intend to revisit the issue of contract interpretation.  When viewed in this light, we do not believe that mandamus relief is warranted.  Even accepting the Company's position that the court's interpretation of the policy is incorrect (a matter on which we offer no opinion), all we would have before us is an incorrect interlocutory ruling by the district court.

---

**[6]** The Company is indisputably correct that the formal "law of the case" doctrine does not apply to this situation, as a district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Mallory v. Eyrich*, 922 F.2d 1272, 1282 (6th Cir. 1991).  Thus, it is not true that the court is bound to its interpretation of the contract in any legally preclusive sense.

Stated differently, "the most that could be claimed" is that the district court erred on a matter within its jurisdiction, *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 437 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964)), which is not a sufficient predicate for mandamus relief.

Turning to the five mandamus factors set forth by our prior cases, allegedly incorrect interlocutory rulings are common on direct appeal in civil cases—*e.g.*, the court denies a motion to dismiss, the case goes to trial and results in a verdict, then we determine on direct appeal that the complaint indeed failed to state a claim and thus the district court incorrectly denied the motion to dismiss.  Thus, under the first and second of the five mandamus factors, the relief sought by the Company is clearly available on direct appeal.  Even more compelling, however, is the third mandamus factor, which asks whether the district court's order is clearly incorrect as a matter of law.  First, there is currently no incorrect order to speak of, as the court vacated the partial summary judgment.  Instead, the most we have is an allegedly incorrect interpretation of the policy, set forth in a now mooted order, and an indication that the court is not inclined to change its mind.  And second, given the unsettled state of the pleadings and discovery, we cannot determine whether the district court's interpretation of the policy is correct or incorrect.  It therefore follows that it is not currently clear that the court's interpretation is incorrect as a matter of law.

In sum, because the first three mandamus factors all cut strongly against issuing mandamus relief on the issue of policy interpretation, we decline the Company's request.

### 2.     Deferring Ruling on the Motion to Dissolve Preliminary Injunction

The second matter for which the Company seeks mandamus relief is a preliminary injunction that the court entered at the same time that it denied the Company's motion to dismiss and prematurely entered summary judgment and class certification for Gooch.  The injunction essentially requires that the Company continue reimbursing Gooch under its old method pending the outcome of the litigation.  The court issued this injunction in March of 2008, but the Company did not seek immediate interlocutory appeal.

Almost one year later, the Company moved to dissolve the preliminary injunction.[7] Gooch did not immediately respond to the merits of the Company's motion. Instead, he moved to combine briefing and ruling on the motion to dissolve with the already pending motions for class certification and for class-wide injunctive relief. The basis for Gooch's motion was as cavalier as it was candid: ruling on the motion to dissolve "may have the undesired effect of" allowing the Company to bring an interlocutory appeal under 28 U.S.C. § 1292. (Docket No. 244.)[8] In other words, Gooch was asking the court to delay ruling on the motion to dissolve in order to prevent the Company from having an immediate basis for appellate jurisdiction. The Company predictably responded that forestalling an appeal is not a proper basis for a court to defer ruling on a motion in due course. Nevertheless, the court granted Gooch's motion in July of 2009, thereby combining the motion to dissolve with Gooch's motions for class certification and class-wide injunctive relief. As of this writing, the court has not ruled on any of these motions, so the injunction remains in place.

Importantly, however, the court did not base its decision to defer ruling on the motion to dissolve on Gooch's rationale of staving off an appeal. Instead, the court stated "this motion is granted to the extent that the Defendants' motion to dissolve will be heard with the motion on class certification *as these motions possess related issues*." (Docket No. 308 (emphasis added).) Though the order does not indicate what these related issues are, we do not find it unreasonable to accept that such issues exist. Thus, it is apparent that the court did not grant the motion for the allegedly improper reason of preventing the Company from seeking interlocutory appellate review; it granted the motion for the wholly proper purpose of conserving judicial resources by considering

---

[7]Gooch makes much of the fact that the Company did not initially appeal the preliminary injunction and tries to characterize the later motion to dissolve as merely an attempt to revive its right to appeal the initial grant of injunctive relief. However the Company's motion to dissolve is not premised upon the argument that the initial ruling was incorrect. Instead, the motion purports to be based on "newly discovered evidence" that would tend to show that Gooch is not facing financial hardship and has submitted false and fraudulent insurance claims.

[8]Citations to the docket refer to the docket entries in *Gooch v. Life Investors Insurance Co. of America*, Case No. 1:07-cv-16 (E.D Tenn.).

related issues together. Because the district court did nothing improper in this respect, we have no basis to exercise our mandamus jurisdiction.[9]

### 3.    Mandamus Relief as to Discovery Issues

The final matter for which the Company seeks mandamus relief is a generalized grievance that the district court is ruling on discovery issues in a one-sided manner in favor of Gooch. As evidence of this general observation, the Company points to several discrete instances, such as when the Court partially lifted a discovery stay for Gooch but not for the Company or when the Court ruled on Gooch's discovery motions within days and failed to rule on the Company's motions for months. Gooch contends that the Company is mischaracterizing the proceedings in the district court and that the Company has earned any discovery adversity that it may face by virtue of its supposedly abusive approach to discovery.

But this is of little import because the Company has made no request for any particularized discovery relief amenable to our mandamus authority. In the context of discovery, mandamus is typically only available in those most extreme situations in which the district court has ordered a party to disclose something that it absolutely should not have to disclose. *See, e.g.*, *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 443 (denying mandamus relief where party sought review of order requiring disclosure of information the party believed was protected by the work product doctrine); *John B.*, 531

---

[9]After the Company petitioned this Court for a writ of mandamus and appealed regarding the injunction of the action in Arkansas state court, the district court entered an order indicating that it would not entertain certain pending motions until we rule on the mandamus petition and the appeal of the *Runyan* injunction. The court thus denied those motions without prejudice and placed the entire case on its administrative docket.

One of those motions was the Company's motion to dissolve the preliminary injunction. Apparently construing this denial without prejudice as a ruling giving rise to a right to seek immediate interlocutory review under 28 U.S.C. § 1292, the Company filed a third appeal, which the Clerk docketed on November 16, 2009 as Case Number 09-6357. As of this writing, Gooch has moved to dismiss for lack of appellate jurisdiction and the Company has responded, but no merits briefs have been filed.

Nevertheless, the basis for the Company's appeal is the denial without prejudice of the motion to dissolve, which the district court has expressly indicated that it will take back up upon the issuance of this opinion. Thus, there is no ruling on the merits of the motion to dissolve that we may review for an abuse of discretion, and we find no abuse of discretion in the court's decision to deny the motion to dissolve without prejudice pending the outcome of the Company's two previous appeals. We therefore assume jurisdiction and affirm the district court's order in Case Number 09-6357 to the extent that it does not prejudice the Company's right to a timely decision on the merits of its motion.

F.3d at 457 (granting mandamus relief when an erroneous discovery order likely would have required disclosure of confidential state information or private personal information unrelated to the lawsuit, and observing that "[t]his court has recognized that mandamus may be used as a means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality") (citations and internal quotations omitted). In other words, there typically must be a discrete discovery ruling that we can look to and find to be so incorrect and prejudicial as to justify exercising our mandamus jurisdiction.

Here, the Company does not point to any instances in which the district court has ordered it to produce information that is privileged or otherwise immune from disclosure. Nor does the Company point to any order denying it access to certain information. At most, the Company complains that the district court has thus far restricted its access to certain information, but there is no indication that the court has denied access to this information permanently, much less that this information is of such great magnitude to justify mandamus relief. Because we are not inclined to move into the practice of issuing generalized mandamus orders directing district courts to go forth and manage discovery correctly, we decline to grant the Company mandamus relief in this case.

**B.     Case No. 09-5868 - Injunction of Settlement Proceedings in Arkansas State Court**

### 1.     Background Relevant to the Injunction

Gooch's case is not the only case in which the Company is being sued over its new approach to reimbursement under the policy. In fact, there are several cases pending in various state and federal courts across the country that advance the same general allegations and claims, some initiated before Gooch filed his complaint and some initiated after Gooch filed his complaint. One such case was filed in the Circuit Court of Pulaski County, Arkansas under the caption *Runyan v. Transamerica Life Insurance Co.*, No. CV-09-2066-3.

The *Runyan* action was filed well after Gooch filed his complaint and encompasses class action allegations materially identical to those set forth in Gooch's complaint. In May of 2009, the Company notified Gooch and the district court that it had reached a settlement in the *Runyan* action that would encompass all of the members of Gooch's putative class as well as Gooch himself. The Arkansas state court had already granted preliminary approval of the settlement and had scheduled a final fairness hearing to take place in July of 2009. The Company therefore moved the district court to stay the class action aspect of Gooch's claim. Gooch and his counsel responded with a flurry of pleadings opposing the Company's motion to stay the class-related claims, culminating in a June 23, 2009 "emergency" motion seeking injunctive relief under the All Writs Act, 28 U.S.C. § 1651(a), preventing the Company from going forward with the *Runyan* settlement.

The common theme of these various filings is Gooch's theory that the *Runyan* case is a sham engineered by the Company to gut the district court's unfavorable interpretation of the insurance policy. Gooch maintains that the settlement "is nothing more than the result of a 'fire sale' by certain plaintiffs' lawyers who are looking more for a fee[—purportedly more than $3.5 million (Docket No. 265 ¶ 4)—]than they are for real relief to people dying of cancer while their insurance company commits fraud against them." (Docket No. 265 ¶ 8.) He theorizes that the Company recruited unscrupulous plaintiffs' attorneys in Arkansas by offering them a windfall in terms of attorneys' fees in return for filing the *Runyan* action in state court. Under Gooch's theory, immediately upon Runyan filing suit, the Company would consent to class certification and then join with Runyan in seeking approval of a class-wide settlement. Gooch's counsel portray the settlement as "an abuse of the judicial system and an egregious compromise of putative class members' due process rights" and as being "intended solely to divest this Court of its authority to preside over this national class action— particularly where it ratifies the Defendants' breach in contravention of this Court's March 6, 2008 Order—and that the settlement is manifestly improper." (Docket No. 265 at 1-2.) Gooch therefore vigorously opposed the Company's motion to stay the

class proceedings in the district court and later moved to enjoin the Company from proceeding with the *Runyan* settlement.

In his motion for injunctive relief under the All Writs Act, Gooch asked the district court to enjoin the Company from proceeding with final settlement of the *Runyan* action. Gooch argued that the injunction was "necessary in aid of [the court's] jurisdiction" and thus proper under the Anti-Injunction Act, 28 U.S.C. § 2283, which greatly curtails a federal court's ability to enjoin state court proceedings except in three enumerated circumstances. The district court agreed and, on July 24, 2009, issued an order enjoining the Company and all of those working for or with it from seeking final approval of the *Runyan* settlement. This order followed a ruling from the bench in which the court expressed its belief that an injunction was necessary and proper under the All Writs Act and Anti-Injunction Act to protect the court's jurisdiction over the claims of both Gooch and the class. In a later order regarding scheduling, the court indicated that:

> The Court remains gravely concerned, however, about the apparent efforts by the Defendants to circumvent this Court's jurisdiction through the Arkansas state court litigation. The potential preclusion of the Plaintiff's claims and those of the class through the impending approval of the settlement agreement in the Arkansas state court on November 9, 2009 would effectively render moot this Court's jurisdiction. This Court does not believe that such a result would be just in the face of the Defendants' apparent procedural gamesmanship and attempts to circumvent the jurisdiction of this Court. The Court expresses the hope that these issues may be addressed in time to prevent a possible substantive injustice against the Plaintiff and potential nationwide class through procedural tactics. These issues will be addressed upon the disposition of the pending writ of mandamus before the Sixth Circuit.

(Docket No. 364.) The Company sought interlocutory review of this injunction. We consolidated that appeal with the Company's already pending petition for a writ of mandamus and expedited briefing.

## 2.    Analysis

The Company primarily contends that the *Runyan* injunction greatly exceeds the court's power under the All Writs Act as limited by the Anti-Injunction Act. The All Writs Act provides that Article III courts generally "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, what appears to be broad discretion and authority has been greatly circumscribed, both by case law and by statute. As then-Chief Justice Rehnquist stated in his capacity as Circuit Justice for the United States Court of Appeals for the District of Columbia Circuit, the All Writs Act generally should only be used "sparingly and only in the most critical and exigent circumstances." *Wisc. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers).

With regard to the ability of a federal court to intercede in state court proceedings using its authority under the All Writs Act, the Anti-Injunction Act provides that "[a] Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The district court issued its injunction pursuant to the "in aid of its jurisdiction" exception to the Anti-Injunction Act. "Whether the district court's injunction falls within the permissible limits of the Anti-Injunction Act is a question of law and we therefore review the matter de novo." *Hatcher v. Avis Rent-A-Car Sys.*, 152 F.3d 540, 543 (6th Cir. 1998).

We have previously observed that the "in aid of jurisdiction" exception applies only in "two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004). Furthermore, "a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 535 (6th Cir. 1978). Because this case is not an *in rem* action and was not removed from state court, all we

have here is a parallel *in personam* action in state court. Our prior precedents, cited above, plainly prohibit injunctive relief in this situation.

In his appellate briefing, Gooch all but concedes this point. He opens his discussion of the *Runyan* injunction as follows:

> The issue ultimately presented in the Insurance Company's appeal of the District Court's injunction under the All Writs Act is whether a defendant should be allowed to collude with plaintiffs having pending actions in other federal courts to effectuate a proposed settlement in a state court beyond CAFA's watchful eye to escape an adverse ruling in a District Court. Stated differently, the question is whether federal law allows corporate defendants now to engage in the same "drive by" certifications (but for settlement purposes) they once vilified and sought to stop through passage of the Class Action Fairness Act. *It may very well be that federal law, at least for now, allows this to occur. But if the law presently allows this dangerously unjust result, then the law should be changed.*

(Appellee's Br. at 63 (emphasis added).)

Gooch then goes on to argue that we should expand the scope of the "in aid of jurisdiction" exception to encompass the situation allegedly presented by the Company's settlement in the *Runyan* action.[10] In support, Gooch cites cases from other circuits that have allowed a third use of the "in aid of jurisdiction" exception under which federal courts can essentially take ownership of complex, typically class action, cases to the exclusion of the state courts.[11]

---

[10]Gooch also argues that, although it was not the basis for the district court's order, the *Runyan* injunction was also proper "to protect or effectuate [the district court's judgment]," which is another exception enumerated in the Anti-Injunction Act. The "judgment" that Gooch seeks to protect and effectuate, of course, is the district court's ruling on the meaning of the insurance policy. There are two problems with this argument. First, Gooch did not make the argument below and it was not the basis of the district court's decision, so it is not properly before us. And second, as stated above, the district court has since vacated its entry of partial summary judgment for Gooch, which was the font of the district court's interpretation of the policy, so there is no formal judgment to protect. Thus, the injunction is also improper under this alternative theory.

[11]These cases arise in materially distinguishable factual circumstances, namely when numerous cases have been consolidated by the Multi-District Litigation panel, the MDL judge has put forth considerable effort coordinating discovery or settlement discussions, and the state court action could potentially affect the federal class and federal settlement. For example, in *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002), a federal court issued an injunction in an MDL nation-wide class action enjoining a Texas state court order that would have acted to opt-out all unnamed members of the Texas class action from the MDL class settlement. The Third Circuit affirmed, stating that "[u]nder an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from

Even if we were inclined to expand our interpretation of the scope of the "in aid of jurisdiction" exception to the Anti-Injunction Act, we do not see this case as being an appropriate candidate for such an extraordinary move because of the combined impact of two critical facts. First, the *Runyan* class action is an opt-out class action and, indeed, Gooch has opted out of the settlement. Thus, it is impossible for the *Runyan* settlement to affect Gooch's rights or claims. Second, despite the motion for class certification pending for well over two years now, the district court still has not certified a class. Where a district court has not certified a class, it necessarily follows that the court has no cause to take extraordinary injunctive measures to protect the interests of a class. When there is no risk of harm to a party's rights and no risk of harm to the rights of a class that does not exist, we see no reason to extend the reach of the All Writs Act beyond our prior precedents.

In sum, the *Runyan* injunction was not authorized under our case law and we find no compelling reason to extend our precedents here. The injunction should therefore be vacated.

**III.**

For the reasons set forth above, we **DENY** the Company's petition for a writ of mandamus in Case Number 09-5598. In Case Number 09-5868, we **REVERSE** the decision of the district court and **VACATE** the injunction of the *Runyan* action. We **AFFIRM** in Case Number 09-6357.

---

multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction" and "maintaining the federal court's flexibility and authority to decide such complex nationwide cases makes special demands on the court that may justify an injunction otherwise prohibited by the Anti-Injunction Act." *Id.* at 235. And, in *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003), the Fifth Circuit affirmed a federal order enjoining a state court case because the same issues and parties were involved in the consolidated MDL Enron securities litigation class action. In both of these cases, the federal court was overseeing a coordinated class action under the authority of the MDL panel. This case, however, is missing these two main attributes.